UNITED STATES BANKRUPTCY COURT
For The District of Colorado

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| FREDERICK WILSON DAVIS | ) | CASE NO: 13-29651 MER |
| | ) | |
| DEBTOR. | ) | CHAPTER 13 |

### DEBTOR'S BRIEF IN SUPPORT OF PLAN CONFIRMATION

COMES NOW, the debtor, Frederick Wilson Davis, by and through his attorney Andrew S. Trexler, who in support of plan confirmation states as follows:

**STATEMENT OF PROCEDURAL HISTORY AND MATERIAL UNDISPUTED FACTS**

1. Debtor Frederick Wilson Davis filed for relief under chapter 13 of the Bankruptcy Code on November 26, 2013.

2. Prior to filing for bankruptcy relief, Debtor signed a Promissory Note for the debt to his mortgage company securing his Condominium at 15150 140th Way SE #H-204, Renton, Washington on October 11, 2005 (Claim No. 11, pgs. 8-10).

3. This note was accompanied by a Deed of Trust and a Condominium Rider promising to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project to Creditor Creditor Molasses Creek Condominium Owners Association (hereinafter "Molasses Creek"), which were also signed by the debtor on October 11, 2005. (Claim No. 11, pgs. 11-22).

4. According to the debtor's Statement of Financial Affairs filed in his chapter 13 case, filed December 10, 2013, at docket no. 10, the debtor vacated the property in 2010 and has derived no income from the property since at least January 1, 2011.

5. According to the itemization of charges filed by the mortgage company, the debtor is at least 30 payments in arrears to the secured mortgage lender. (Claim No. 11, pgs. 3-4).

6. As of April 21, 2014, neither the lender nor Molasses Creek has foreclosed on their liens securing the debt owed to them.

7. The debtor's amended plan dated February 18, 2014, at docket no. 24 proposes to provide for all pre- and post-petition fees and assessments payable to Molasses Creek through surrender of the property. If the agreement between the debtor and Molasses Creek could be characterized as an executory contract, the debtor has not assumed it in his plan.

8. Molasses Creek has objected to confirmation of the debtor's plan on the basis that the "obligation to pay assessments is a covenant running with the land that is an incidence of

1

Debtor's ownership… until Debtor divests himself of ownership of said property." (Molasses Creek Objection, docket no. 34, para. 4).

9. Molasses Creek also objected to the inclusion of pre-petition assessments in the debtor's discharge, but the parties have discussed this since the objection was filed, and Molasses Creek concedes all pre-petition assessments and fees are dischargeable in the debtor's chapter 13 case.

10. Debtor counters that any obligation he may have to Molasses Creek arises out of a pre-petition agreement entered into prior to filing for chapter 13 relief, and as such that any obligations are properly "debts", which are not excepted from discharge under 11 U.S.C. §1328(a).

## LEGAL ARGUMENT

### I. Molasses Creek's Assessments Meet the Definition of "Claim" Under the Bankruptcy Code

The post-petition assessments sought to be excepted from discharge by Molasses Creek are best characterized as contingent, unmatured claims against the debtor. The Bankruptcy Code's definitions of "debt" and "claim" were intentionally drafted to encompass all legal obligations of the debtor. "Debt" is defined as "liability on a claim." 11 U.S.C. §101(12). In turn, a "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" §101(5). This definition was characterized in the Senate Report issued prior to enactment of the modern Bankruptcy Code as "the broadest possible definition" of the terms, so that "**all legal obligations** of the debtor, no matter how remote or contingent, will be able to be dealt with in the Bankruptcy case." S. Rep. No. 95-989, at 22 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808. (emphasis added). *See also* Johnson v. Home State Bank, 501 U.S. 78, 83 (1991) ("Congress intended by [§101's] language to adopt the broadest possible definition of 'claim.'").

2

Congress could have made this definition less broad in order to, for instance, keep equitable servitudes which came with future, contingent rights to payment out of the reach of the Bankruptcy Code, but it did not. *See* Conn. Nat'l Bk. v. Germain, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." (internal citations omitted)). Further, Congress made it clear when developing and passing the modern Bankruptcy Code that it had no intention of leaving *any* legal obligation out of the Code, so long as it included some sort of right to payment. §101(a)(5); S. Rep. No. 95-989, *infra.*

It is true in the case at bar that Molasses Creek did not have a present right to payment for post-petition assessments when the debtor filed his petition, and that any such right to payment would depend on whether the debtor continued to hold legal title to his home. These facts simply mean the debt, arising out of the pre-petition agreement with Molasses Creek to pay assessments as they came due for as long as he held legal title to the Condo, were unmatured and contingent in nature. *See* In re Turner, 101 B.R. 751, 754 (Bankr. D. Utah 1989) (Acknowledging Utah Code states the assessment is a "debt of the owner at the time …made" but reasoning that "federal bankruptcy law, not state law governs when a debt or claim arises… [and] post-petition assessments were merely the periodic maturing of [the HOA's] prepetition claim and debtor's prepetition obligation, resulting in common expenses becoming due and payable.").

Since the post-petition dues owed to Molasses Creek constitute a "debt" under the Bankruptcy Code, the debtor may provide for this debt in his chapter 13 plan. *Id., see also* In re Colon, 465 B.R. 657, 661 (Bankr. D. Utah 2011).

## II. The Claim of Molasses Creek for Post-petition Assessments is Dischargeable Pursuant to §1328(a).

Having first shown that the pre-petition relationship between the debtor and Molasses Creek has created a "debt" and "claim", we must now turn to whether this debt is dischargeable in the debtor's chapter 13 case.

The Bankruptcy Code includes a clear scheme for excepting debts from the discharge provisions of §524. The general rule of the Bankruptcy Code is that a discharge operates to void judgments arising from, and to permanently enjoin any further acts to obtain judgment or otherwise collect, recover or offset as a personal liability of the debtor, "**any debt** discharged under section 727, 944, 1141, 1228, or 1328" of Title 11 U.S. Code. §524(a)(1)-(2) (emphasis added). Accordingly, any and all liabilities on claims are discharged, unless the Code otherwise provides for an exception to discharge applicable to a debtor who has received a discharge in a particular chapter. *See also* Bellco First Fed. Credit Union v. Kaspar (In re Kaspar), 125 F.3d 1358, 1361 (10th Cir. 1997) ("[E]xceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor.")

Most exceptions to discharge, including the exception to discharge for post-petition fees or assessments that become due and payable after the filing of a petition to a membership association such as Molasses Creek, are contained in §523(a). Notably, prior to enumerating the specific debts excepted from discharge by §523, including the exception at Paragraph (a)(16), the subsection states "[a] discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt [enumerated in the subsection]." The debtor in the case at bar is not, however, seeking a discharge under any provision referenced in §523(a), but is instead seeking discharge of his debts pursuant to §1328(a).

4

§1328(a) has its own list of exceptions to discharge. Paragraph (a)(1) excepts from discharge any liability on a claim where the debtor is providing for "the curing of any default… and maintenance of payments… on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]" §1328(a)(1), *incorporating* §1322(b)(5). The debtor's debt to Molasses Creek *could have* been such a claim, were the debtor keeping his condo and curing pre-petition arrears pursuant to §1322(b)(5), rather than surrendering the property to Molasses Creek and any other secured creditors holding claims against his Condo pursuant to §1325(a)(5)(C). Paragraphs (a)(3)-(4) of section 1328 are also exceptions to discharge, but the debt at issue in this case is clearly not within their ambit.

This leaves as the only possible exception to discharge those debts referred to in Paragraph (a)(2). This paragraph incorporates several exceptions to discharge enumerated in §523(a), but notably leaves out (a)(16), which excepts post-petition fees and assessments from chapter 7, 11, 12, and 1328(b) discharge orders. As the Bankruptcy Court for the District of Maryland noted in *Carrollan Gardens*:

> Because 11 U.S.C. §523(a)(16) is not specifically listed among the exceptions to a Chapter 13 discharge entered after completion of all of a debtor's payments under a Chapter 13 plan, the *in personam* obligation to pay condominium fees does not survive as an exception to discharge. But, this obligation survives discharge as an *in rem* obligation because it is a covenant running with the land. If it were otherwise, a debtor could continue to live in a unit after completion of a Chapter 13 plan in perpetuity without the obligation to pay the same fees that neighbors must pay.

Carrollan Gardens Condo. Ass'n v. Khan (In re Khan), 504 B.R. 409, 412 (Bankr. D. Md. 2014); *accord* Colon, 465 B.R., at 662 ("[A]ccording to the plain language of §523(a), §523 does not apply to discharges granted under §1328(a)."), In re Kelly, 2010 Bankr. LEXIS 1409 (Bankr. N.D. Cal. 4/28/2010); *Cf.* In re Barr, 457 B.R. 733 (Bankr. N.D. Ill 2011) (Assessments did not discharge

in chapter 7 case due to §523(a)(16) exception to discharge), In re Liversidge, 2010 Bankr. LEXIS 4406 (Chapter 7 – same reasoning).

There is, of course, a split of authority on the question of whether post-petition assessments of the kind assessed by Molasses Creek discharge in chapter 13.[1] Courts holding that such debts are non-dischargeable, or simply are simply post-petition obligations running with the land seem to gloss over the fact that this reasoning would render the existence of §523(a)(16) superfluous. If such obligations, though arising from a pre-petition agreement to pay membership fees and assessments, are simply post-petition covenants running with the land, and as such not touched by the Bankruptcy Code, then why did Congress even include them in the §523(a) exceptions to discharge? In other words, there would have been no reason for creating the exception at all.

Congress, of course, did not intend for Paragraph (a)(16) to be superfluous or redundant, or to clarify an already-existing legal rule, but rather as a response to the holdings of numerous bankruptcy courts which held such obligations to be dischargeable in any bankruptcy case.

### III. Amendments to the Code in 1994 and 2005 Did Not Upset the Above Scheme in Chapter 13 and Evidence Congress' Intent to Include Post-Petition Assessments in §1328(a) Discharge

Prior to the addition of present-day Paragraph (a)(16) to §523(a) of the Code, the question of whether post-petition assessments of HOA dues based on a pre-petition agreement between Debtor and Creditor was raised in numerous bankruptcy courts. In the seminal case of *In re Rosteck*, the U.S. Court of Appeals for the 7th Circuit dealt with this issue. In *Rosteck*, the debtors purchased a condominium, and incurred the obligation to pay monthly assessments to their HOA. Shortly

---

[1] *See, e.g.* Foster v. Double R Ranch Ass'n (In re Foster), 435 B.R. 650 (B.A.P. 9th Cir. 2010) (non-dischargeable covenant running with the land); Maple Forest Condo Ass'n v. Spencer (In re Spencer), 457 B.R. 601 (E.D. Mich 2011) (same).

6

thereafter, they filed a chapter 7 petition. In determining whether the debt could be discharged in their chapter 7 case, the 7th Circuit first analyzed Congress' definitions of "debt" and "claim", and concluded that the assessments, though levied post-petition, were pre-petition debts based on Congress' exceptionally broad definitions:

> [A]s we have seen, contingent, unmatured, unliquidated, and unfixed debts are still debts. 'Contingent' means: 'Possible but not assured; doubtful or uncertain; conditioned upon some future event which is itself uncertain or questionable. . . . It implies that no present interest exists, and that whether such interest or right will ever exist depends upon a future uncertain event.' This definition describes perfectly the Rostecks' obligation for future assessments: they agreed to make payments, but whether and how much they actually had to pay depended on future uncertain events. The Rostecks thus had a debt for the future assessments under the Bankruptcy Code's broad definition of debt.

In re Rosteck, 899 F.2d. 694, 697 (7th Cir. 1990) (internal citations omitted).

The court then went on to reason that:

> [s]ince the Rostecks' debt for future assessments, based on their pre-petition agreement to pay those assessments, existed when they filed their bankruptcy petition, that debt was discharged by the bankruptcy court in its discharge order. This result is consistent with the Bankruptcy Code's goal of providing debtors a fresh start… By bringing even contingent and unliquidated claims into the bankruptcy case, "'Congress has insured that the debtor will receive the complete discharge of his debts, without the threat of lingering claims "riding through" the bankruptcy.'"

*Id.* (quoting *In re Baldwin-United Corp.*, 55 Bankr. 885, 898 (Bankr.S.D.Ohio 1985)); *accord* In re Elias, 98 B.R. 332, 335 (relying on broad definition of "debt"); In re Montoya, 95 B.R. 511 (Bankr. S.D.Ohio 1988) (same).

Following the ruling in *Rosteck*, Congress passed the Bankruptcy Reform Act of 1994, (Pub. L. 103-394) which among other changes, included a new exception to discharge "for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a dwelling unit…" if the fee was payable for a period when

7

the debtor physically occupied the dwelling. *See* Sec. 309, Fairness to Condominium and Cooperative Owners, Bankruptcy Reform Act of 1994, Pub. L. 103-394, *available at* http://www.gpo.gov/fdsys/pkg/BILLS-103hr5116enr/pdf/BILLS-103hr5116enr.pdf. As Senator Strom Thurmond stated in support of the bill, "associations may be unfairly burdened if members can file bankruptcy to discharge future assessments, but continue to reside on the property and receive benefits from the association." 140 Cong. Rec. S4526 (daily ed. Apr. 20, 1994). Despite the existence of the *Rosteck* case, which held that such debts may be discharged, regardless of the chapter under which a debtor was proceeding, Congress did not extend the discharge exception to the standard, and more broad chapter 13 discharge.

Following these changes, the issue of discharge in chapter 13 continued to come before the federal courts, which continued to be split. *See, e.g.* In re Eno, 269 B.R. 319 (Bankr. M.D. Pa. 2001) (Discharged in chapter 13, and citing numerous cases on each side of the issue), In re Mattera, 203 B.R. 565 (Bankr. D.N.J. 1997) (same); *but see* In re Rivera, 256 B.R. 828 (Bankr. M.D.Fla. 2000) (nondischargeable because a covenant running with the land).

Congress again amended Paragraph (a)(16) in 2005 as part of BAPCPA, Pub. L. 109-8. This time, Congress removed the limitation which protected Debtors who surrendered their property, stating that Congress was "broaden[ing] the protections accorded to community associations with respect to fees or assessments arising from the debtor's interest in a condominium…[.] Irrespective of whether or not the debtor physically occupies such property, fees or assessments that accrue during the period the debtor or the trustee has a legal, equitable, or possessory ownership interest in such property are non-dischargeable." H. Rep. 109-31. Again, Congress made a policy decision to widen its exception to discharge, and again, it did nothing to include this exception in the broader §1328(a) "super-discharge."

"Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." Russello v. U.S., 464 U.S. 16, 23 (1983). Further, a court should "not presume to ascribe [a difference between two sections of the same Act] to a simple mistake in draftsmanship." *Id.* Thus, after numerous decisions by courts around the country on this issue, and after two revisions to the Bankruptcy Code to address the question of debts owed to membership associations, there is no justification for presuming that that Congress just mistakenly forgot to include (a)(16) in the exceptions to discharge in 1328(a), or that Congress was just clarifying an already-understood legal principle. Congress had ample opportunity to address case law holding such debts are dischargeable in a standard chapter 13, and to include them in exceptions to discharge contained in § 1328(a), and it did not. In fact, that it did not do so is only further evidence that these are "debts" under the Bankruptcy Code, and that they are dischargeable pursuant to the broader discharge provision in §1328(a).

### IV. Recent Case Law Holding Membership Association Dues are Non-dischargeable is Factually Distinguishable

Finally, some courts have reasoned that to except these debts from discharge keeps debtors from getting a "head start" by discharging the assessments and keeping the property. The 9th Circuit Bankruptcy Appellate Panel in *Foster* reasoned that "[i]n essence the "running" covenant rule in this case boils down to one of "you stay, you pay" since debtor's confirmed plan indicates he will stay in his home by curing his prepetition default on his mortgage and maintain on-going payments through his confirmed Chapter 13 plan." *Foster*, 435 B.R., at 661.

In the case at bar though, the debtor has long-since abandoned his property in Washington, has derived no benefit from it for many years, and has not made a payment to the mortgage company in over 30 months. *See* Debtor's Statement of Financial Affairs, Questions 2 & 15, at docket no.

9

10 (filed 12/10/2013); Claim No. 11, pgs. 3-4 (filed 3/28/2014). As such, the debtor is not trying to take advantage of the Bankruptcy Code's broad discharge provisions while benefitting from ownership of the property. Indeed, were the debtor attempting to keep the property, he would likely be required to provide for the curing of arrears and maintenance of payments with Molasses Creek pursuant to §1322(b)(5). In such a case, the debt would be excepted from discharge pursuant §1328(a)(1). Because he is not providing for the curing of arrears and maintenance of payments, he is surrendering the property, and Molasses Creek's claim for pre- and post-petition assessments is provided for by surrender to Molasses Creek and the mortgage company. *See also* Colon, 465 B.R., at 663 ("to hold Debtors liable for postpetition HOA dues when they no longer live at the Property and indeed have surrendered the Property to the secured lienholder is not only inequitable, but in contrast to the plain language of §1328(a).").

## Conclusion

Because the pre- and post-petition assessments against the debtor by Molasses Creek meet the Code's broad definitions of "debt" and "claim", and because the exception to discharge for such debts is not included in the "super-discharge" of §1328(a), such debts are dischargeable in the debtor's chapter 13 case presuming he does not convert to another chapter or seek a hardship discharge pursuant to §1328(b). Congress' two amendments to the Code in 1994 do not change this fact - and indeed further bolster the debtor's argument - because Congress never extended the provision excepting post-petition assessments in §523(a)(16) to the exceptions contained in §1328(a)(1)-(4), despite having ample opportunity to do so during the course of enacting two major bankruptcy reform acts. Finally, the case at bar is distinguishable from those cases which hold that discharge under §1328(a) does not include post-petition assessments to membership associations like Molasses Creek due to the general rule against giving Debtors a "head start" because the

10

debtor in this case is not seeking to keep the property while freeing himself of the obligation to Molasses Creek.

WHEREFORE, Debtor prays this Honorable Court overrule the objection to confirmation of Debtor's plan filed by Molasses Condominium Owners Association on March 19, 2014 at docket no. 34.

RESPECTFULLY SUBMITTED this 21st day of April, 2014.

/s/ Andrew S. Trexler_____
Andrew S. Trexler, #39089
7887 E. Belleview Ave., Suite 1100
Englewood, CO 80111
P: (303)228-2257
F: (303)228-2297
astrexlercourts@gmail.com
Attorney for Debtor

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of DEBTOR'S BRIEF IN SUPPORT OF PLAN CONFIRMATION was served by placing the same in the United States Mail, first class postage prepaid, this April 21, 2014 to the following:

Sally Zeman, Chapter 13 Trustee
*Via ECF per Trustee Policy*

Molasses Creek Condo Association
c/o Moeller Graf, P.C.
385 Inverness Pkwy, #200
Englewood, CO 80112

Aronowitz & Mecklenburg
*Via e-mail per notice to*
bk@amlawco.com

/s/ Andrew Trexler
_____